Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
BLAKELY LAW GROUP
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

*Attorneys for Plaintiffs*
*Justin Sundquist, Henry Kingi*
*and Eagle Flights Stunts, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN SUNDQUIST, an individual; HENRY KINGI, an individual, AND EAGLE FLIGHTS STUNTS, INC., a California Corporation;<br><br>Plaintiff,<br><br>vs.<br><br>UNBIQUITY, INC., an unknown business entity; and CHRISTOPHER CARMICHAEL, an individual; and DOES 1-10, inclusive,<br><br>Defendant. | CASE NO.<br><br>**PLAINTIFFS' COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Justin Sundquist, Henry Kingi and Eagle Flights Stunts, Inc., (collectively, "Plaintiffs") for its claims against Defendants Unbiquity, Inc., and Christopher Carmichael (collectively, "Defendants") respectfully alleges as follows:

## OVERVIEW OF CLAIMS

1.  This is a fraud and securities fraud action against Ubiquity, Inc. (the "Company" or "Ubiquity"), based on misrepresentations of facts and failure to disclose

material facts which led Plaintiffs to invest over $1.8 million in the Company between them.

2. Ubiquity states on its webpage (www.ubiquitycorp.com) that it provides IP based content and services for mobile, tablet, and professional and lifestyle screens. It lists two products, Sprocket and WEAV.

3. To induce Plaintiffs Henri Kingi and Justin Sundquist to purchase the Company, Defendant Christopher Carmichael ("Carmichael"), on behalf of Defendant Ubiquity, made materially false and misleading statements regarding the Company's products and the Company's purported multi-million dollar contracts with or offers from third parties such as Apple, Inc., Cisco Systems, the United States Government, American Tec Company Limited ("Amertec"), and Deutsche Bank. As a result of Defendants' false statements, Plaintiffs Henry Kingi and Justin Sundquist lost over $1.5 million. As Defendants knew, Plaintiff Henry Kingi was not an accredited investor, could not afford to put virtually all his money into Ubiquity, and had to borrow $120,000 to make some of the investments.

## JURISDICTION AND VENUE

4. Jurisdiction is conferred by § 27 of the 1934 Securities and Exchange Act ("1934 Act") and § 22 of the 1933 Securities Act ("1933 Act"). Claims asserted herein arise under §§ 10(b) and 20(a) of the 1934 Act, § 12 of the 1933 Act, and SEC Rule 10b-5.

5. Venue is proper in this district pursuant to § 27 of the 1934 Act. The false and misleading statements were made in or issued from this district.

6. Ubiquity maintains its principal executive office at 9801 Research Drive, Irvine, California. The acts and conduct complained of herein, including the dissemination of materially false and misleading information to Plaintiffs, occurred in this district.

7. In connection with the acts and conduct alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mail and interstate wire and telephone communications.

# THE PARTIES

8. Plaintiff Henri Kingi, a resident of Los Angeles, California, is a senior citizen who is a very inexperienced investor, having never invested more than one hundred thousand dollars in any stock or company prior to his investment in Ubiquity. Plaintiff Eagle Flight Stunts, Inc. is an S corporation that he owns.

9. Plaintiff Justin Sundquist is a resident of Santa Clarita, California.

10. Defendant Ubiquity is a corporation with its principal place of business at 9801 Research Drive, Irvine, California.

11. Defendant Christopher Carmichael is the CEO, Chairman of the Board, and cofounder of Ubiquity.

# FRAUDULENT SCHEME AND COURSE OF BUSINESS

12. Defendants are liable for: (i) making false statements; and (ii) failing to disclose adverse facts known to them about Ubiquity. Defendants' fraudulent scheme and course of business that operated as a fraud or deceit on Plaintiffs was a success, as it deceived Plaintiffs about Ubiquity's prospects and business, and caused Plaintiffs to purchase Ubiquity common stock at inflated prices.

13. During a telephone conversation between Plaintiff Justin Sundquist and Defendant Christopher Carmichael in or about the second week of March, 2013, Defendant Carmichael, on behalf of Defendant Ubiquity, made the following statements to Plaintiff Sundquist:

    (a) Cisco Systems and Apple, Inc. had both made efforts to acquire the right to use Ubiquity's Sprocket product.

    (b) Cisco Systems said it wanted to buy the company outright for $1 billion or more.

    (c) The United States Government said that it planned to integrate Ubiquity's WEAV product into the Government's own database.

    (d) Investors had just ten (10) days left to invest in this round at $2.50 per share.

14. Defendants made these statements to induce Plaintiff Sundquist to purchase Ubiquity common stock and to recommend that others invest in Ubiquity.

15. Unbeknownst to Plaintiffs, the foregoing statements were all false. The true facts, which were known to Defendants, were:

    (a) Neither Cisco Systems nor Apple, Inc. had made an offer to acquire the right to use Ubiquity's Sprocket product at this time.

    (b) Cisco Systems had not said that it wanted to buy the company outright for $1 billion or more, or any amount close to $1 billion.

    (c) The United States Government had not said that it planned to integrate Ubiquity's WEAV product into the Government's own database.

    (d) Investors had more than ten (10) days to invest in the current round of financing at $2.50 per share.

16. In reliance on the statements set forth in paragraph 13 above, Plaintiff Justin Sundquist spent $250,000 to purchase common stock in the Company on March 16, 2013.

17. In or about the third week of May, 2013, Plaintiff Henry Kingi had a telephone conversation with Defendant Carmichael in which he stated that he was a friend of Justin Sundquist's, and asked whether he could still invest in Ubiquity. Defendant Carmichael responded that he still could invest at $2.50 per share.

18. Defendants knew or should have known that the statements set forth above in paragraph 13 would be transmitted to friends or relatives of Justin Sundquist, and in particular, knew or should have known that such statements had been transmitted to Plaintiff. In reliance on these statements and similar statements by Defendant Carmichael when they spoke by telephone as referenced above, and without knowledge of the true facts, Plaintiff Henry Kingi spent $150,000 to purchase common stock in the Company on May 21, 2013, and spent an additional $100,000 to purchase common stock in the Company on June 4, 2013.

19. Plaintiffs Henry Kingi and Justin Sundquist attended a presentation concerning Ubiquity, at the Ubiquity offices, in or about June of 2013. During this presentation, Plaintiffs viewed a person live on a satellite screen demonstrating the Sprocket product, as well as the WEAV and Giftsender products, and showing how these products are used. During this presentation, Defendant Carmichael, on behalf of Defendant Ubiquity, made the following statements to those assembled, including Plaintiffs Sundquist and Kingi:

    (a) The Sprocket, WEAV, and Giftsender products are completed products, ready to be announced and be the subject of deals with third parties.

    (b) Cisco Systems and Apple, Inc. both had made offers to acquire the right to use Ubiquity's Sprocket product.

    (c) Cisco Systems said it wanted to buy the company outright for $1 billion or more.

    (d) The United States Government had said that it planned to integrate Ubiquity's WEAV product into the Government's own database.

20. Defendants made these statements to induce Plaintiffs and others who were attending the demonstration to Ubiquity.

21. Unbeknownst to Plaintiffs, the foregoing statements were all false. The true facts, which were known to Defendants, were:

    (a) The Sprocket, WEAV, and Giftsender products were not completed products, were not ready to be announced, and could not yet be the subject of deals with third parties.

    (b) Neither Cisco Systems nor Apple, Inc. had made an efforts to acquire the right to use Ubiquity's Sprocket product at this time.

    (c) Cisco Systems had not said it wanted to buy the company outright for $1 billion or more, or any amount close to $1 billion.

    (d)  The United States Government had not said that it planned to integrate Ubiquity's WEAV product into the Government's own database.

22. In reliance on the statements set forth in paragraph 19 above, Plaintiff Henry Kingi made the following additional purchases of Ubiquity stock at inflated prices:

    (a)  On July 22, 2013, $100,000 for 40,000 shares in the name of Eagle Flight Stunts, Inc.;

    (b)  On July 30, 2013, $125,000 for 50,000 shares in the name of Eagle Flight Stunts, Inc.;

    (c)  On August 8 and 9, 2013, $150,000 for 120,000 shares in the name of Eagle Flight Stunts, Inc.;

    (d)  On August 27, 2013, $50,000 shares (of which all but 4,000 were in name of Eagle Flight Stunts, Inc.)

    (e)  On October 17, 2013, $50,000 for 20,000 shares in the name of Eagle Flight Stunts, Inc.;

    (f)  On October 18, 2013, $50,000 for $20,000 shares (of which all but 4,000 were in the name of Eagle Flight Stunts, Inc.);

    (g)  On November 12, 2013, $75,000 for 10,000 shares in the name of Alex Kingi, 10,000 shares in the name of LookDeeper Productions, Inc. and 10,000 shares in the name of King Kame Constructions Inc.;

    (h)  On April 7, 2014, $200,000 for 800,000 shares of Ubiquity (which then became 228,571.42 after a reverse stock split).

23. In reliance on the representations set forth in paragraph 19 above, on April 4, 2014, Justin Sundquist paid $120,000 for 143,000 shares of Ubiquity common stock (after a reverse stock split) at an inflated price.

24. In or about August or early September of 2014, after the one-year

restriction on sales of stock had expired with respect to Plaintiffs' early investments, but when the Ubiquity stock price was at or about $4 per share, Defendant Christopher Carmichael, on behalf of Defendant Ubiquity, telephoned both Plaintiffs. During each of these telephone conversations, Defendant Carmichael said that Ubiquity was about to be listed on NASDAQ if at least 86 percent of the investors agreed to sign restriction rights agreements. During each of these telephone conversations Defendant Carmichael on behalf of Defendant Ubiquity, represented to each of the Plaintiffs that Ubiquity had a 40-80 million dollar deal with Deutsche Bank as the underwriter, and that having Deutsche Bank as an underwriter would ensure that the stock would be above $4 per share.

25. Defendants made the statements set forth in paragraph 24 to induce Plaintiffs Sundquist and Kingi to sign restriction rights agreements.

26. Unbeknownst to Plaintiffs, the statement set forth in paragraph 24 were materially misleading. The true facts, which were known to Defendants but not disclosed to Plaintiffs, was that listing on NASDAQ was questionable and that the Deutsche Bank deal would not be pursued if, as was likely because the Amertec deal was not going forward, the common stock price of Ubiquity dropped substantially below $3 per share.

27. In reliance on the representation about Deutsche Bank set forth in paragraph 24, and in the belief that the Deutsche Bank deal would go forward, Plaintiffs each signed the restriction rights agreement.

28. Both Plaintiffs would have sold some of their Ubiquity common stock within two months after September 1, 2014, had they not entered into the restriction rights agreement.

29. Defendant Carmichael has benefited from the investments made by Plaintiffs, which helped keep the company in business so that Defendant Carmichael could receive hundreds of thousands of dollars in salary and bonuses.

## LOSS CAUSATION

30. Defendants made the aforementioned false and misleading statements, and engaged in a course of conduct that operated as a fraud or deceit on Plaintiffs by misrepresenting the Company's business and prospects. As a result of their purchases of Ubiquity common stock, Plaintiffs suffered economic loss, i.e., damages, under the federal securities laws.

## LIABILITY

31. Defendants are liable for the aforementioned false and misleading statements because, at the time each was made, the speaker knew it was false or misleading, and the speaker was the C.E.O. and Chairman of the Board of Ubiquity and was authorized to make such statements on behalf of Ubiquity.

## FIRST CLAIM FOR RELIEF

**(Violation of §10(b) of the 1934 Act and Rule 10b-5 Against All Defendants)**

32. Plaintiffs incorporate ¶¶ 1-31 by reference.

33. Defendants made the false and misleading statements specified above, which they knew or deliberately disregarded as untrue or misleading in that they contained misrepresentations. Defendants failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

34. Defendants violated § 10(b) of the 1934 Act and Rule 10b-5 in that they:
   (a) employed devices, schemes, and artifices to defraud;
   (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or
   (c) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiffs in connection with their purchases of Ubiquity common stock.

35. Plaintiffs have suffered damages in that, in reasonable reliance on the representations made by Defendants, they paid artificially inflated prices for Ubiquity common stock.

36. Plaintiffs would not have purchased Ubiquity common stock at the prices they paid, or at all, if they had been aware that Defendants' statements were false and misleading.

## SECOND CLAIM FOR RELIEF

**(Violation of § 20(a) of the 1934 Act Against All Defendants)**

37. Plaintiffs incorporate ¶¶ 1-36 by reference.

38. Defendant Carmichael acted as a controlling person of Ubiquity within the meaning of § 20(a) of the 1934 Act. By virtue of his position with the Company, and ownership of Ubiquity stock, Defendant Carmichael had the power and authority to cause Ubiquity to engage in the wrongful conduct complained of herein. Ubiquity controlled Defendant Carmichael and all of its employees. By reason of such conduct, Defendants are liable to Plaintiffs pursuant to § 20(a) of the 1934 Act.

## THIRD CLAIM FOR RELIEF

**(Common Law Fraud Against All Defendants)**

39. Plaintiffs incorporate ¶¶ 1-38 by reference.

40. Defendants made representations to Plaintiffs which, as noted above, were false. At the time these false representations were made, Defendants knew them to be false and/or made the representations recklessly and without regard for its truth.

41. Defendants intended that Plaintiffs rely on these representations.

42. Plaintiffs reasonably relied to their detriment on Defendants' representations set forth above, and suffered damages as a result.

43. Plaintiffs were unaware of the falsity of Defendants' representations until January 2016, and were not on inquiry notice of the falsity of Defendants' representations within three years of the filing of this action.

44. Defendants' actions were malicious, oppressive, and fraudulent. Plaintiffs are entitled to punitive damages to punish Defendants and to deter similar wrongdoing by others in the future.

## FOURTH CLAIM OF RELIEF

### (Common Law Negligent Misrepresentation)

45. Plaintiffs incorporate ¶¶ 1-44 by reference.

46. Defendants made representations to Plaintiffs which, as noted above, were false.

47. In the unlikely event that Defendants may have honestly believed that the representations were true, Defendants had no reasonable grounds for believing the representations were true when they made them.

48. Defendants intended that Plaintiffs rely on these representations.

49. Plaintiffs reasonably relied to their detriment on Defendants' representations set forth above, and suffered damages as a result.

## FIFTH CLAIM FOR RELIEF

### (Violation of California Corporations Code § 25400 and 25401 Against All Defendants)

50. Plaintiffs incorporate ¶¶ 1-49 by reference.

51. Defendants made the false and misleading statements specified above, which they knew at the time were false or misleading, or which they had reasonable ground to believe at the time were false and misleading.

52. Defendants violated California Corporations Code §§ 25400 and 25401 in that they made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

53. Plaintiffs have suffered damages in that, in reasonable reliance on the representations made by Defendants, they paid artificially inflated prices for Ubiquity common stock.

54. Plaintiffs would not have purchased Ubiquity common stock at the prices they paid, or at all, if they had been aware that Defendants' statements were false and misleading.

55. Plaintiffs did not discover that Defendants statements were false and misleading, and with the exercise of reasonable care would not have discovered that Defendants' statements were false and misleading, until January 2016, when James Tsiolis of iWebgate informed them that the Ubiquity products did not have the right code to work without the iWebgate product.

56. Pursuant to California Corporations Code §§ 25500 and 25501, Plaintiffs are entitled to rescind their investments set forth above, and to obtain a return of their investments, plus interest at the legal rate.

## SIXTH CLAIM FOR RELIEF

### (Violation of California Corporations Code § 25503 Against All Defendants)

57. Plaintiffs incorporate ¶¶ 1-49 by reference.

58. Because Henry Kingi was not an accredited investor or qualified purchaser, as Defendants knew, Defendants failed to satisfy an exemption to the state securities laws when they sold the following stock without first qualifying it:

    (a) 200,000 common shares of Ubiquity stock to Eagle Flight Stunts, Inc. (paid for by Henry Kingi) for $100,000 on July 10, 2014;

    (b) 200,000 common shares of Ubiquity stock to Eagle Flight Stunts, Inc. (paid for by Henry Kingi) for $100,000 on August 1, 2014;

    (c) 200,000 common shares of Ubiquity stock to Justin Sundquist on November 20, 2014 for $100,000;

    (d) 40,000 common shares of Ubquity stock for Eagle Flights Stunts, Inc. (paid for by Justin Sundquist) in November, 2014 fir $200,000; and

    (e) 182,000 shares of common shares of Ubiquity stock to Eagle Flight

Stunts, Inc. (paid for by Henry Kingi) for $90,000 on November 25, 2014.

59. Plaintiffs did not discover that Defendants failed to satisfy an exemption to the state securities laws until May, 2016.

60. Pursuant to California Corporations Code § 25503, Plaintiffs are entitled to rescind their investments made after May, 2014, and to obtain a return of their investments, plus interest at the legal rate.

## SEVENTH CLAIM FOR RELIEF

**(Violation of Section 12(2) of the Securities Act of 1933 Against All Defendants)**

61. Plaintiffs incorporate ¶¶ 1-53 by reference.

62. Because Henry Kingi was not an accredited investor or qualified purchaser, as Defendants knew, Defendants failed to satisfy an exemption to the federal securities laws when they sold the stock referenced hereinabove without first qualifying it.

63. Plaintiffs did not discover that Defendants failed to satisfy an exemption to the federal securities laws until May 2016, and would not have discovered this fact within the two years prior to the filing of this action by the exercise of due diligence.

64. Pursuant to Section 12(2) of the Securities Act of 1933, Plaintiffs are entitled to rescind their investments, and to obtain a return of their investments, plus interest at the legal rate.

## EIGHTH CLAIM FOR RELIEF

**(Elder Abuse Against All Defendants)**

65. Plaintiffs incorporate ¶¶ 1-53 by reference.

66. Defendants violated the Elder Abuse and Dependent Adult Civil Protection Act by taking financial advantage of Plaintiff Henry Kingi.

67. Defendants, with the intent to defraud, took money from Plaintiff Henry Kingi by urging and inducing him to purchase Ubiquity stock at vastly inflated prices.

68. Henry Kingi was older than 65 years old at the time of Defendants' conduct set forth herein.

69. Defendants have retained Henry Kingi's money after obtaining it with the intent to defraud him and by defrauding him.

70. Henry Kingi has been harmed as a result.

71. Defendants' conduct was a substantial factor in causing Henry Kingi's harm.

72. Defendants' actions were malicious, oppressive, and fraudulent. Plaintiff Henry Kingi is entitled to punitive damages to punish Defendants and to deter similar wrongdoing by others in the future.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Justin Sundquist, Henry Kingi and Eagle Flights Stunts, Inc., respectfully prays that this Court enter judgment in its favor and against Defendants Unbiquity, Inc., and Christopher Carmichael as follows:

1. For rescission of their purchases of Ubiquity common stock, and payment to them by Defendants of the consideration given for such stock, plus interest at the legal rate;

2. In the alternative as to some or all of the stock that Plaintiffs purchased, for damages, plus prejudgment interest as provided by law;

3. For punitive damages;

4. Awarding them reasonable attorneys' fees, court costs, and expenses; and

5. Ordering such other and further relief as the Court deems just, necessary and proper

Dated: August 9, 2016                    BLAKELY LAW GROUP

By: _____
Brent H. Blakely
*Attorneys for Plaintiffs*
*Justin Sundquist, Henry Kingi*
*and Eagle Flights Stunts, Inc.*

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Justin Sundquist, Henry Kingi and Eagle Flights Stunts, Inc. hereby demands a trial by jury as to all claims in this litigation.

Dated: August 9, 2016

BLAKELY LAW GROUP

By: _____
Brent H. Blakely
*Attorneys for Plaintiffs*
*Justin Sundquist, Henry Kingi*
*and Eagle Flights Stunts, Inc.*